Jonathan M. Cohen, SBN 168207
Joseph and Cohen, a Professional Corporation
3629 25th Street
San Francisco, CA 94110
(415) 817-9200

*Attorneys for Plaintiff Matthew Harris*

UNITED STATES DISTRICT COURT
EATERN DISTRICT OF CALIFORNIA

MATTHEW HARRIS,
Plaintiff

v.

VENTYX INC. and UNITED HEALTHCARE INSURANCE COMPANY;
Defendants.
_______________________________________/

Case No.: 11-133

**COMPLAINT**

COMES NOW, Plaintiff, MATTHEW HARRIS, by and through undersigned counsel and files his Complaint against the Defendants VENTYX INC. and UNITED HEALTHCARE INSURANCE COMPANY:

## I. JURISDICTION AND VENUE

1. Plaintiff's claims are filed pursuant to 29 U.S.C. § 1001, *et seq*. (ERISA). Venue and jurisdiction are, therefore, proper pursuant to 29 U.S.C. § 1132. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

## II. PARTIES

2. Plaintiff, MATTHEW HARRIS, is a resident of Roseville, California. Plaintiff was an employee of VENTYX INC. and was an eligible plan participant of the Ventyx Inc. Group Welfare Plan (the "Plan") at all times material to this action.

3. Defendant, VENTYX INC. was the Plan Sponsor and Adminstrator.

4. Defendant UNITED HEALTHCARE INSURANCE COMPANY is the insurer for the Plan.

5. The Plan states that it is administered on behalf of the Plan Administrator, VENTYX INC. by the Insurance Carrier, UNITED HEALTHCARE INSURANCE COMPANY.

## III. FACTS

6. Plaintiff joined Global Energy Decisions (GED) as an employee during February 2007. At that time, GED had a long term disability insurance plan with a benefits limit of $5,000 per month. Plaintiff enrolled in GED's long term disability insurance plan.

7. Defendant VENTYX INC. then acquired GED in September 2007. MATTHEW HARRIS then became an employee of VENTYX INC. with the same job title (Senior Vice President, Analytics) and pay.

8. It was Plaintiff's understanding that the long term disability plan which was in effect prior to VENTYX INC.'S acquisition of GED remained in effect for 2007 and 2008. Plaintiff remained enrolled in the long term disability plan.

9. On January 1, 2009, VENTYX INC. implemented the Plan. A copy of the certificate of insurance is attached hereto as Exhibit A. As compared to the GED long term disability plan, the Plan provided a monthly benefit of the lesser of $20,000 or up to 66 2/3% of gross monthly earnings. Plaintiff purchased the coverage offered by the Plan, utilizing "post-tax" earnings.

10. Plaintiff was diagnosed with Stage IV Lung Cancer in June 2007. He began treatments in June 2007 at UC Davis under Dr. Gandara and has been under continuous treatment since diagnosis. Defendants have never suggested that Plaintiff was not disabled under the terms of the Plan.

11. In the beginning of November 2009, due to upcoming chemotherapy treatments, Plaintiff approached VENTYX INC. about retiring from its employ and making a claim for long term disability benefits under the Plan.

12. Plaintiff met with Judy Mayo, VENTYX INC.'s Human Resources Manager, to discuss the

benefits under the Plan. He specifically pointed out the Continuation of Coverage and Pre-Existing Condition language included in the Plan and asked if it would apply.

13. Ms. Mayo said she did not know for certain but would check with VENTYX INC.'s insurance broker, Mercer, to find out.

14. Ms. Mayo told Plaintiff a few days later that Mercer said that the January 1, 2009 Plan would govern with the higher benefit caps as well as the post-tax features that VENTYX INC. had identified when it rolled out the Plan.

15. Based on these representations, on November 10, 2009, Plaintiff elected to go on disability.

16. On May 21, 2010, UNITED HEALTHCARE INSURANCE COMPANY sent a letter to Plaintiff approving his claim for benefits. However, as noted in the letter (a copy of which is attached hereto as Exhibit B), UHC initiated a "pre existing review" and based upon the fact that Plaintiff had been receiving treatment for his cancer since 2007, concluded that the pre-existing condition exclusion did apply,

17. Taken in conjunction with the continuity of insurance upon transfer of insurance coverage language which is part of the pre-existing condition exclusion, UNITED HEALTHCARE INSURANCE COMPANY concluded that instead of the $10,766 due under the terms of the Plan, Plaintiff entitled to only $5,000 per month which was the maximum under the GES long term disability plan.

18. Obviously, this was completely contrary to what Plaintiff had been told to him by Ms. Mayo after she supposedly discussed the matter with Mercer.

19. Subsequent to receiving the coverage decision, Plaintiff was told that VENTYX INC. and Mercer had discussions with UNITED HEALTHCARE INSURANCE COMPANY regarding this matter and asked for reconsideration of the decision. Plaintiff was not privy to those discussions.

20. If Plaintiff had been provided accurate information about the coverage under the Plan, he could have and would have remained employed by VENTYX INC. until after the one year requirement

for pre-existing conditions. He could have easily used his sick and vacation time to remain employed beyond January 1, 2010, at which point he would have been eligible for more than $10,000 per month.

21. Plaintiff timely appealed the UNITED HEALTHCARE INSURANCE COMPANY coverage decision (a copy of which is attached hereto as Exhibit C).

22. UNITED HEALTHCARE INSURANCE COMPANY denied the appeal (a copy of which is attached hereto as Exhibit D) based upon its inability to obtain information from VENTYX INC. as well as other individuals contacted.

**BREACH OF FIDUCIARY DUTY UNDER ERISA**

23. Plaintiff incorporates by reference, as though set forth fully herein, Paragraphs 1 through 22.

24. Under ERISA Section 404, an ERISA fiduciary must discharge their duties (1) "solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries" and (2) with the "care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of any enterprise of like character with like aims".

25. UNITED HEALTHCARE INSURANCE COMPANY, which was acting as fiduciary in conducting the appeals process, breached its fiduciary duty to Plaintiff when it failed to conduct a reasonable appeal of the claim. UNITED HEALTHCARE INSURANCE COMPANY had a duty to look at all aspects of the claim, not just conformity with the policy language.

26. VENTYX INC., as the sponsor and administrator of the Plan, made a material misrepresentation and breached its fiduciary duty when it failed to provide accurate information to Plaintiff regarding the applicability of the Pre-Existing Condition clause of the Plan.

27. VENTYX INC., as the sponsor and administrator of the Plan, had a fiduciary duty to advise Plaintiff not to go out on disability until after January 1, 2010 if there was even the slightest possibility that doing so would result in reduced benefits.

28. VENTYX INC., as the sponsor and administrator of the Plan, breached its fiduciary duty to Plaintiff, a participant in the Plan, when it failed to participate in the appeal and admit that it did not provide accurate information to a participant.

29. As a direct result of the breaches of fiduciary duty on the part of UNITED HEALTHCARE INSURANCE COMPANY and VENTYX INC., Plaintiff has been deprived of benefits under the Plan.

**PRAYER FOR RELIEF**

30. Plaintiff incorporates by reference, as though set forth fully herein, Paragraphs 1 through 22 and 24 through 29.

31. As a result of the acts and/or omissions of Defendants as alleged herein, the Defendants owe the Plaintiff unpaid long term disability benefits, plus interest, commencing on or about May 10, 2010.

32. As a result of the acts and/or omissions of Defendants as alleged herein, Plaintiff is entitled to appropriate equitable relief as a result of the acts and/or omissions of the Defendant.

33. To the extent that Defendants violated any provisions of Subchapter I of Title 29, Chapter 18 of the United States Code, Plaintiff is entitled to reasonable attorney's fees and costs of this action pursuant to 29 U.S.C. Section 1132(g)(1).

WHEREFORE, Plaintiff prays for a judgment against the Defendants for the relief as pled herein and for such other equitable relief as this Honorable Court deems just and proper.

Dated: January 31, 2011

Joseph and Cohen, A Professional Corporation

By: /s/ Jonathan M. Cohen
Jonathan M. Cohen

EXHIBIT A

UnitedHealthcare®
Specialty Benefits℠

# GROUP LONG TERM DISABILITY CERTIFICATE OF COVERAGE

# FOR

# VENTYX INC.

**POLICY NUMBER: 302036**

**EFFECTIVE DATE: January 1, 2009**

If there is a discrepancy between the provisions of the Employer's on-line or printed Certificates and the provisions of the Certificates furnished by the Company, the provisions of the Group Policy will prevail.

RIT-UHIC/2008

Class 1 – Executives
(2-09)

**United HealthCare Insurance Company**

**450 Columbus Boulevard**

**Hartford, Connecticut**

**(Home Office)**

---

**Policyholder:** SCS Group Life Insurance Trust, Trusted in the State of Rhode Island

**Enrolling Group:** Ventyx Inc.

**Policy Number:** 302036

**Effective Date of Enrolling Group:** January 1, 2009

**Beneficiary:** As on file with the Administrator

We, United HealthCare Insurance Company, issue this Certificate to the Covered Person as evidence of insurance under the Policy We issued to the Policyholder shown above. This Certificate describes the benefits and other important provisio ns of the Policy. Please read it carefully.

The Policy may be amended, changed, cancelled or discontinued without the consent of the Covered Person or the Covered Person's beneficiary.

The benefits described in this Certificate insure the Covered Person. This Certificate becomes effective at 12:01 A.M. Eastem Standard time on the Effective Date shown above.

**Read the Group Certificate Carefully**

This is a legal contract between the Policyholde r and Us. If the Policyholder has any questions or problems with the Policy, We will be ready to help the Policyholder. The Policyholder may call upon his agent or Our Home Office for assistance at any time.

If the Policyholder, Enrolling Group, or the Cover ed Person have questions, need information about their insurance, or need assistance in resolving complaints, call 1-866-615-8727.

It is signed at the Home Office of United HealthCa re Insurance Company as of the Effective Date shown above.

Secretary

President

**Group Working Returns Long Term**
**Disability Insurance Policy**
**Non-Participatin g**

Administrative Office:
9900 Bren Road East
Minnetonka, MN 55343

## TABLE OF CONTENTS

Schedule of Benefits ........................................ 1

General Definitions ........................................ 3

Certificate General Provisions ........................................ 5

Covered Person Eligibility, Effective Date and Termination Provisions ........................................ 7

Working Returns Long Term Disability Insurance for Covered Person ........................................ 9

# SCHEDULE OF BENEFITS

## Class of Employees

This schedule covers the following class(es) of Employees of companies and affiliates controlled by the Enrolling Group:

All active full-time executive Employees (CEO, CFO, SVP and Global Sales), excluding temporary and seasonal employees

## Description of Class:

Employees are considered eligible for benefits if they customarily work: 30 hours per week

## Employee Waiting Period:

An Employee is eligible for insurance on the later of the following dates:

1. The Enrolling Group's Effective Date, January 1, 2009
2. The date he begins continuous employment with the Policyholder.

**Cost of Insurance:** The Covered Person is not required to contribute to the cost of his Base Plan Long Term Disability insurance. The Covered Person is required to contribute the entire cost of his Buy-Up Plan Long Term Disability insurance.

## Covered Person Insurance:

## Long Term Disability Benefit:

**Base Plan: Benefit Percent:** 60% of the Covered Person's Pre-Disability Monthly Earnings. The Covered Person's benefit may be reduced by Other Income Benefits and Disability Earnings. Some Disabilities may not be insured under the Policy.

**Buy-Up Plan: Benefit Percent:** 66 2/3% of the Covered Person's Pre-Disability Monthly Earnings. The Covered Person's benefit may be reduced by Other Income Benefits and Disability Earnings. Some Disabilities may not be insured under the Policy.

**Pre-Disability Monthly Earnings Definition:**
The average monthly earnings received from the Covered Person's Employer for the 12-month period ending just prior to the date of Disability. Pre-Disability Monthly Earnings includes commissions, averaged over the lesser of the most recent 24-month period or the Covered Person's period of employment. It does not include bonuses, overtime pay, and other extra compensation.

**Maximum Monthly Benefit:** $20,000

**Minimum Monthly Benefit:** Greater of $100 or 10% of Gross Disability Payment.

**Elimination Period:** 180 days - Benefits begin the day after completion of the Elimination Period.

**Accumulation of Elimination Period:** 30 days

## SCHEDULE OF BENEFITS (continued)

**Maximum Benefit Period:**
Reducing Benefit Duration reflecting Social Security Normal Retirement Age

| **Age at Disability** | **Maximum Benefit Period** |
|---|---|
| | Greater of SSNRA * or |
| Less than age 60 | To age 65 |
| Age 60 | 60 Months |
| Age 61 | 48 Months |
| Age 62 | 42 Months |
| Age 63 | 36 Months |
| Age 64 | 30 Months |
| Age 65 | 24 Months |
| Age 66 | 21 Months |
| Age 67 | 18 Months |
| Age 68 | 15 Months |
| 69 and over | 12 Months |

*SSNRA means the Social Security Normal Retirement Age as figured by the 1983 amendment or any later amendment to the Social Security Act.

Premium contributions are waived while the Covered Person is receiving Long Term Disability payments.

## GENERAL DEFINITIONS

The male pronoun, whenever used in the Policy, includes the female.

**Active Work or Actively at Work:** The Covered Person reports for work at his usual place of employment or any other business location where he is required to travel and is able to perform the material and substantial duties of his regular occupation for the entire normal workday. The Covered Person must be working at least the minimum number of hours per week in an Eligible Class, as shown in the Schedule of Benefits.

Unless Disabled on the prior workday or on the day of absence, a Covered Person will be considered Actively at Work on the following days:

1. a Saturday, Sunday or holiday which is not a scheduled workday;
2. a paid vacation day, or other scheduled or unscheduled non-workday; or
3. an excused or emergency leave of absence (except medical leave.

**Contributory or Non-Contributory Insurance:** Contributory Insurance is insurance for which the Covered Person must apply and agree to make the required premium contributions. Non-Contributory Insurance is insurance for which the Covered Person does not have to make any premium contributions.

**Covered Person:** The Employee insured under the Policy. References to "Covered Person," "Covered Persons" and "Covered Person's" throughout this Certificate are references to a Covered Person.

**Employee:** A person who is:

1. directly employed in the normal business of the Enrolling Group; and
2. paid for services by the Enrolling Group; and
3. Actively at Work for the Enrolling Group, or any subsidiary or affiliate insured under the Policy.

No director or officer of an Enrolling Group will be considered an Employee unless he meets the above conditions.

**Enrolling Group:** The participating employer of the Policyholder insured under the Policy. References to "Enrolling Group," "Enrolling Groups" and "Enrolling Group's" throughout this Certificate are references to an Enrolling Group.

**Hospital or Medical Facility:** A legally operated, accredited facility licensed to provide full-time care and Treatment for the condition for which benefits are payable under the Policy. It is operated by a full-time staff of licensed physicians and registered nurses. It does not include facilities that primarily provide custodial, education or rehabilitativ e care, or long-term institutional care on a residential basis.

**Injury:** A bodily Injury resulting directly from an accident and independently of all other causes.

## GENERAL DEFINITIONS (continued)

**Physician:** A practitioner of the healing arts who is:

1. duly licensed in the state in which the Treatment is received; and
2. practicing within the scope of that license.

The term Physician does not include the Covered Person, the Covered Person's Spouse, children, parents, parents-in-law, or siblings.

**Regular Care:** The Covered Person personally visits a Physician as often as is medically required to effectively manage and treat his disabling condition(s), according to generally accepted medical standards. The Covered Person is receiving appropriate Treatment and care, according to generally accepted medical standards, by a Physician whose specialty or experience is appropriate for the disabling condition(s).

**Sickness:** An illness, disease, pregnancy or complication of pregnancy.

**Treatment:** consultation, advice, tests, attendance or observation, supplies or equipment, including the prescription or use of prescription drugs or medicines.

**We, Our and Us:** United HealthCare Insurance Company.

## CERTIFICATE GENERAL PROVISIONS

**Conformity With State or Federal Statutes:** If any provision of the Certificate conflicts with any applicable law, the provision will be deemed to conform to the minimum requirements of the law.

**Discretionary Authority:** When making a benefit determination under the Policy, We have the sole discretionary authority to determine the Covered Person's or Dependent's eligibility, if applicable, for benefits and to interpret the terms, conditions, limitations, and exclusions, and all other provisions of the Policy including the Certificate of Coverage and any riders or amendments. We may delegate this discretionary authority to other entities or persons who provide services in regard to the administration of the Policy. This provision applies, however, only where the interpretation of the Policy is governed by the Employee Retirement Income Security Act (ERISA). This provision does not prevent the bringing of a legal action under the time limit for Legal Action provision, nor does it serve to deprive any insurance department of its statutory rights and obligations.

**Fraud:** We will focus on all means necessary to support fraud detection, investigation, and prosecution. It may be a crime if the Covered Person or the Employer knowingly, and with intent to injure, defraud or deceive Us, files a claim containing any false, incomplete, or misleading information. These actions, as well as submission of false information, will result in denial of the Covered Person's claim, and are subject to prosecution and punishment to the full extent under state and/or federal law. We will pursue all appropriate legal remedies in the event of insurance fraud.

**Incontestability:** We may not contest the validity of the Policy, except for the non-payment of premiums or fraudulent misrepresentations, after it has been in force for two years from its date of issue. No statement made by any Covered Person relating to his insurability shall be used in contesting the validity of the insurance with respect to which such statement was made after such insurance has been in force prior to the contest for a period of two years during such person's lifetime, nor unless it is contained in a written instrument signed by him.

**Information To Be Furnished:** The Enrolling Group may be required to furnish any information needed to administer the Policy. Clerical error by the Enrolling Group will not:

1. affect the amount of insurance which would otherwise be in effect; or
2. continue insurance which otherwise would be terminated; or
3. result in the payment of benefits not otherwise payable.

Once an error is discovered, an equitable adjustment in premium will be made. If the premium adjustment involves the return of unearned premium, the amount of the return will be limited to the 12-month period, which precedes the date We receive proof such an adjustment should be made. We may inspect any of the Enrolling Group's records which relate to the Policy.

**Misstatement of Age:** If a Covered Person's age has been misstated, premiums will be subject to an equitable adjustment. If the amount of the benefit depends upon age, then the benefit will be that which would have been payable, based upon the person's correct age.

**Payment of Premiums:** No insurance provided by the Policy will be in effect until the first premium for such insurance is paid. For insurance to remain in effect, each subsequent premium must be paid on or before its due date. The Enrolling Group is responsible for paying all premiums as they become due. Premiums are payable on or before their due dates at Our Home Office. A Grace Period of 31 days from the Premium Due Date will be allowed for the payment of each premium after the first premium payment. During the Grace Period, the insurance will remain in effect provided the premium is paid before the end of the Grace Period. Payment of Premium for a period before it is due will not guarantee that the insurance will remain in effect for that period.

## CERTIFICATE GENERAL PROVISIONS (continued)

**Premium Rate Change:** We have the right to change premium rates as of any Premium Due Date but not more than once in any 12-month period.. We will notify the Enrolling Group in writing at least 31 days prior to the change in rates.

The premium rate may change prior to this time however, for reasons that affect the insured risk, which include:

1. a change occurs in benefits;
2. a division, subsidiary, or affiliated company is added or deleted;
3. the number of Employees insured changes by 10% or more;
4. a new Law or a change in any existing Law is enacted which applies to the Policy.

A change may take effect on an earlier date if both the Enrolling Group and We agree to it. Except in the case of fraud, premium adjustments, refunds or charges will be made for only the current Policy year.

**Termination of an Enrolling Group's Insurance:** Insurance under the Policy will terminate on the earliest of the following dates:

1. on the Premium Due Date of any premium which remains unpaid at the end of the Grace Period.
2. the date the Enrolling Group terminates it's participation under the Policy. The Enrolling Group must give 31 days advance written notice to Us.
3. the date on which the Enrolling Group fails to comply with or intentionally makes material misrepresentation relating to the Policy.

We reserve the right to terminate insurance under the Policy on the date that the number of Covered Persons insured under the Enrolling Group decreases to less than:

1. 75% of all eligible Employees of an Enrolling Group, if the Enrolling Group contributes partially towards the cost of insurance;
2. 100% of all eligible Employees of an Enrolling Group, if the Enrolling Group contributes in whole towards the cost of insurance; or
3. 10 Covered Persons.

**Records:** The Enrolling Group must furnish all information required by Us to:

1. compute premiums; and
2. maintain necessary administrative records.

Records of the Enrolling Group, which have a bearing on insurance, will be available for inspection by Us at any reasonable time.

**Workers' Compensation:** The Policy is not to be construed to provide benefits required by Workers' Compensation laws.

## COVERED PERSON ELIGIBILITY, EFFECTIVE DATE AND TERMINATION PROVISIONS

**Covered Person's Eligibility:** Employees who work on a full-time basis for a Enrolling Group are eligible for insurance after completion of the required Employee Waiting Period, provided they are in a class of Employees who are included. Employees will be considered to work on a full-time basis if they customarily work at least the number of hours per week shown in the Schedule of Benefits .

An Employee will become eligible for insurance on the latest of the following dates:

1. the Effective Date of the Policy;
2. the Effective Date of the Enrolling Group;
3. the end of the Employee Waiting Period shown in the Schedule of Benefits;
4. the date the Policy is changed to include the Employee's class; or
5. the date the Employee enters a class eligible for insurance.

**Effective Date of Covered Person Insurance:** If an Employee is not Actively at Work on the date his insurance is scheduled to take effect, it will take effect on the day after the date he returns to Active Work. If the Employee's insurance is scheduled to take effect on a non-working day, his Active Work status will be based on the last working day before the scheduled Effective Date of his insurance.

An Employee must use forms provided by Us when applying for insurance.

The Employee's insurance will be effective at 12:01 A.M. Eastern Standard time as follows:

1. if it is Non-contributory, on the date the Employee becomes eligible for insurance, regardless of when he applies, or
2. if it is Contributory, and the Employee makes application within 31 days after the date he first became 2 eligible, on the later of:
   a. the date the Employee is eligible for insurance, regardless of when he applies; or
   b. the date the Employee's application is approved by Us if evidence of insurability is required.

Evidence of insurability is required if an Employee applying for Contributory Insurance:

1. does not apply for insurance within 31 days after the date he first became eligible; or
2. he has previously terminated his insurance while in an eligible class.

**Family and Medical Leave of Absence:** If the Covered Person is on a Family or Medical Leave of Absence, his insurance will be governed by his Employer's policy on Family and Medical Leaves of Absence.

We will continue the Covered Person's insurance if the cost of his insurance continues to be paid and his Leave of Absence is approved in advance and in writing by his Employer.

The Covered Person's insurance will continue for up to the greater of:

1. the leave period required by the Federal Family and Medical Leave Act of 1993; or
2. the leave period required by applicable state law.

While the Covered Person is on a Family or Medical Leave of Absence, We will use earnings from his Employer just prior to the date his Leave of Absence started to determine Our payments to him.

## COVERED PERSON ELIGIBILITY, EFFECTIVE DATE AND TERMINATION PROVISIONS (continued)

If the Covered Person's insurance does not continue during a Family or Medical Leave of Absence, then when he returns to Active Work:

1. he will not have to meet a new Employee Waiting Period including a Waiting Period for insurance of a Pre-Existing Condition, if applicable; and
2. he will not have to give Us evidence of insurability to reinstate the insurance he had in effect before his Leave of Absence began.

However, time spent on a Leave of Absence, without insurance, does not count toward satisfying his Employee Waiting Period.

**Termination of Covered Person Insurance:** The Covered Person's insurance will terminate at 12:00 midnight Eastern Standard time on the earliest of the following dates:

1. the last day of the period for which a premium payment is made, if the next payment is not made;
2. the date he ceases to be a member of a class eligible for insurance;
3. the date the Policy terminates, or a specific benefit terminates; or
4. the date last day of the month during which he ceases to be Actively at Work, unless
    a. For a leave of absence governed by federal or any applicable state Family and Medical Leave of Absence law, insurance will be continued in accordance with the Family and Medical Leave of Absence provision.
    b. the Employee becomes a member of the armed forces on active duty, the Long Term Disability insurance will continue for up to 30 days from the date he stopped active work
5. the date he is no longer Actively at Work due to a labor dispute, including but not limited to strike, work slow down or lock out.

## WORKING RETURNS LONG TERM DISABILITY INSURANCE FOR COVERED PERSON

**Definition of Disabled or Disability:**
The Covered Person is Disabled or has a Disability when We determine that:

1. he is unable to perform some or all of the Material and Substantial Duties of his Regular Occupation due to his Sickness or Injury; and
2. he has a 20% or more loss in Indexed Pre-Disability Monthly Earnings due solely to the same Sickness or Injury; and.
3. he is under the Regular Care of a Physician.

Disability must begin while the Covered Person is insured under the Policy.

**Material and Substantial Duties:** duties that

1. are normally required for the performance of the Covered Person's Regular Occupation; and
2. cannot be reasonably omitted or modified.

**Regular Occupation means:** the occupation which the Covered Person is routinely performing when his Disability occurs. We will look at the Covered Person's occupation as it is normally performed in the national economy instead of how the work tasks are performed for a specific Employer or at a specific location.

**Gainful Occupation means:** an occupation that can be expected to provide the Covered Person with an income at least equal to his Gross Disability Payment within 12 months of his return to work, considering:

1. his past training, as well as training he could receive;
2. his education and experience; and
3. his physical and mental capacity.

Gainful Occupation will be determined with the assistance of a licensed vocational or rehabilitation specialist.

The loss of a professional or occupational license or certification does not, in itself, mean the Covered Person is Disabled. Additionally, economic factors, such as recession, job obsolescence, pay-cuts and job sharing will not be considered in determining whether the Covered Person meets the definition of Disability/Disabled.

We require the Covered Person to be under the Regular Care of a Physician for the Sickness or Injury causing his disability in order to be eligible to receive payments from Us.

## WORKING RETURNS LONG TERM DISABILITY INSURANCE FOR COVERED PERSON (continued)

We may require the Covered Person to be examined by Physicians, other medical practitioners or vocational experts of Our choice. We will pay for these examinations. We can require examinations as often as it is reasonable to do so. We may also require the Covered Person to be interviewed by an authorized representative of Ours. Refusal to be examined or interviewed may result in denial or termination of his claim.

**Transplant Benefit:** If, while insured under the Policy, the Covered Person donates an organ for an Organ Transplant Procedure, and as a result he becomes Disabled, We will consider him to be Disabled as a result of Sickness and his Eliminat ion Period will be waived. Disability resulting from an Organ Transplant Procedure will have a limited pay period of 12 months. This benefit will be payable only once in the Covered Person's lifetime. Benefit payments will be subject to all of the provisions contained in the Policy, except for those that are in conflict with the provisions of this Transplant Benefit.

**Organ Transplant Procedure means:** the Covered Person donates any of the following for transplantation into another person: kidney, liver, lung, skin or bone marrow.

**Calculating the Monthly Payment:**
The Benefit Percent and Maximum Monthly Benefit are shown in the Schedule of Benefits.

Calculate the Covered Person's Monthly Payment as follows:

1. Multiply the Covered Person's Pre-Disabilit y Monthly Earnings by the Benefit Percent.
2. Compare the result in Step 1 with the Maximum Monthly Benefit.
3. The lesser of these two amounts is the Covered Person's monthly Gross Disability Payment.
4. Subtract from his monthly Gross Disability Payment all Other Income Benefit amounts that he receives or is eligible to receive. The result is the Covered Person's Monthly Payment.

In no event will the Covered Person's Monthly Payment exceed the Maximum Monthly Benefit.

If the Covered Person is Disabled and working, earning between 20% and 80% of his Indexed Pre-Disability Monthly Eamings calculate his benefit payment as follows:

Calculate the Covered Person's Gross Disability Payment as follows:

1. Multiply his Pre-Disability Monthl y Earnings by the Benefit Percent.
2. Compare the result in Step 1 with the Maximum Monthly Benefit.
3. The lesser of these two amounts is the Covered Person's Gross Disability Payment, which is used in the benefit calculation below.

When the Covered Person first returns to work during a period of disability, the Work Incentive Benefit establishes that, for 12 months, his Monthly Payment, as determined above, will not be reduced as long as Payment does not exceed 100% of his Indexed Pre-Disability Monthly Eamings.

## WORKING RETURNS LONG TERM DISABILITY INSURANCE FOR COVERED PERSON (continued)

During the period of time that the Work Incentive Benefit applies:

1. Add the Covered Person's monthly Disability Earnings to his Gross Disability Payment, as calculated above.
2. Compare the result in Step 1 to his Indexed Pre-Disability Monthly Earnings.
3. If the result from Step 2 is less than or equal to 100% of the Covered Person's Indexed Pre-Disability Monthly Earnings, We will not further reduce his Monthly Payment, as calculated above.
4. If the result in Step 2 is greater than 100% of the Covered Person's Indexed Pre-Disability Monthly Earnings, We will subtract the amount over 100% from his Monthly Payment, as calculated above.

The result is the amount We will pay the Covered Person each month.

After the period of time that the Work Incentive Benefit applies:

1. Subtract the Covered Person's Disability Earnings from his Indexed Pre-Disability Monthly Earnings.
2. Divide the result in Step 1 by his Indexed Pre-Disability Monthly Earnings. This is his percentage of lost earnings.
3. Multiply the Covered Person's Monthly Payment, as calculated above, by the answer in Step 2.

The result is the amount We will pay the Covered Person each month.

After the Elimination Period, if the Covered Person is Disabled for only part of a month, We will send him 1/30th of his payment for each day of Disability.

**Gross Disability Payment means**: the payment amount before We subtract Other Income Benefits and Disability Earnings.

**Monthly Payment means:** the payment amount after We subtract any Other Income Benefits.

**Elimination Period means:** the length of time the Covered Person must be continuously Disabled before a benefit is payable. The Elimination Period begins on the first day of Disability. If the Covered Person returns to work for a period of time not to exceed the Accumulation of Elimination Period and cannot continue, he will not have to begin a new Elimination Period. However, We will count only those days he is Disabled toward satisfying the Elimination Period. The Elimination Period and the Accumulation of Elimination Period are shown in the Schedule of Benefits.

**Disability Earnings mean:** the earnings, which the Covered Person receives while Disabled, and working

**Indexed Pre-Disability Monthly Earnings:** The Covered Person's Pre-Disability Monthly Earnings adjusted on each anniversary of benefit payments by the lesser of 5% or the current annual percentage increase in the Consumer Price Index (CPI-W). The Covered Person's Indexed Pre-Disability Monthly Earnings may increase or remain the same, but will never decrease. This manner of indexing is only used to determine the Covered Person's percentage of lost earnings while he is Disabled and working and in the determination of Gainful Occupation. Consumer Price Index (CPI-W) means: the index for Urban Wage Earners and Clerical Workers published by the U.S. Department of Labor. We reserve the right to use some other similar measurement if the Department of Labor changes or stops publishing the CPI-W.

## WORKING RETURNS LONG TERM DISABILITY INSURANCE FOR COVERED PERSON (continued)

**Receipt of Disability Payments:** The Covered Person will begin to receive payments when We approve his claim, provided the Elimination Period has been met and he is Disabled. We will send him a payment each month for any period for which We are liable. If he is Disabled and working, proof of Disability Earnings will be required before benefits are paid.

**Disability During a Covered Layoff or Leave of Absence:** If the Covered Person becomes Disabled while he is on a covered Layoff or Leave of Absence, We will calculate his benefit using his Pre-Disability Monthly Earnings from his Employer in effect just prior to the date his absence begins.

**Fluctuation of Disability Earnings:** If the Covered Person's Disability Earnings fluctuate, We may average his Disability Earnings over the most recent 3 months to determine if his claim should continue subject to all other terms and conditions in the Policy.

If We average his Disability Earnings, We will not terminate his claim unless the average of his Disability Earnings from the last 3 months exceeds 80% of his Indexed Pre-Disability Monthly Earnings.

We will not pay the Covered Person for any month during which Disability Earnings exceed the amount allowable under the Policy.

**Other Income Benefits:** We will subtract from the Covered Person's Gross Disability Payment the following Other Income Benefits:

1. any benefits and awards he receives or is eligible to receive under:
   a. Workers' Compensation Law;
   b. occupational disease Law; or
   c. any other similar Act or Law.
2. any Disability income benefits he receives or is eligible to receive under:
   a. any compulsory benefit Act or Law;
   b. any other group insurance policy with the Employer or with an association;
   c. any other group insurance policy with another Employer under which he becomes insured while he is Disabled under the Policy; or
   d. any governmental retirement system as the result of his job with his Employer.
3. any benefits under the United States Social Security Act, The Canada Pension Plan, The Quebec Pension Plan, the Jones Act, and any other similar plan or Act. Benefits include:
   a. Disability benefits he is eligible to receive and any disability benefits his Spouse or his children receive or are eligible to receive as a result of his Disability.
   b. retirement benefits he receives and any retirement benefits his Spouse or his children receive as a result of his receipt of retirement benefits.

   If the Covered Person's Disability begins after his 70th birthday, and he was receiving Social Security retirement benefits before his Disability began, then We will not reduce Our payments to him by these retirement benefits.

   **Pension Plan means:** a plan that provides retirement benefits and which is not wholly funded by Employee contributions. The term does not include a profit sharing plan, a thrift plan, an individual retirement account (IRA), a tax sheltered annuity plan (TSA), a stock ownership plan or a non-qualified plan of deferred compensation.
4. any benefits he receives from the Employer's sick leave or salary continuation plan.

5. any benefits from the Employer's retirement plan, the Public Employees Retirement System and the State Teachers Retirement System he:

   a. receives as disability benefits;

   b. voluntarily chooses to receive as retirement benefits; or

   c. receives as retirement benefits once he reaches the greater of age 62 or normal retirement age, as defined in his Employer's Retirement Plan.

   Regardless of how the retirement funds from the plan are distributed, for the purposes of determining Our payment to the Covered Person, We consider Employee and Employer contributions to be distributed at the same time throughout the Covered Person's lifetime.

   We will not reduce payments the Covered Person receives from Us for his contributions to the Employer's retirement plan, or for amounts he rolls over or transfer to an eligible Retirement Plan.

   Disability benefits under a retirement plan are benefits that are paid due to disability and which do not reduce the retirement benefits which would have been paid if the disability had not occurred.

   Retirement benefits under a retirement plan are benefits that are paid based on the Covered Person's Employer's contribution to the retirement plan. Disability benefits that reduce the retirement benefits under the plan will also be considered a retirement benefit.

   Eligible retirement plan is defined in Section 402 of the Internal Revenue Code of 1986 and includes future amendments to Section 402 affecting the definition.

6. any benefits for loss of time or lost wages he receives from the mandatory portion of a no-fault motor vehicle insurance plan, or automobile liability insurance policy.

7. any amount he receives under any unemployment compensation Law.

8. any amounts he receives from a third party (after subtracting attorney's fees) by judgment, settlement or otherwise.

If the Covered Person receives any of the Other Income Benefits in a lump sum payment, We will pro-rate the lump sum on a monthly basis over the time period for which the sum was given. If no time period is stated, the sum will be pro-rated on a monthly basis to the end of the Covered Person's Maximum Benefit Period.

Other Income Benefits must be payable as a result of the same Disability for which the Covered Person is receiving a payment from Us, except for retirement benefits.

## WORKING RETURNS LONG TERM DISABILITY INSURANCE FOR COVERED PERSON (continued)

We will NOT subtract from the Covered Person's Gross Disability Payment any amounts he receives from the following sources:

1. 401(k) plans
2. profit sharing plans
3. thrift plans
4. tax sheltered annuities
5. stock ownership plans
6. non-qualified plans of deferred compensation
7. Pension plans for partners
8. military pension and military disability income plans
9. credit disability insurance
10. franchise disability income plans
11. a retirement plan from another Employer
12. Individual Retirement Accounts (IRA)
13. individual disability income plans

**Affect of Other Income Benefits on Payment:** If subtracting Other Income Benefits results in a zero benefit, We will pay the Covered Person the Minimum Monthly Benefit shown in the Schedule of Benefits. The Minimum Monthly Benefit, however, may be applied toward an outstanding overpayment.

**Cost of Living Increases:** After the first deduction for each of the Other Income Benefits, We will not further reduce the amount of the Covered Person's Monthly Payment under the Policy due to cost of living increases he receives from any of the sources described in the "Other Income Benefits" section.

**Estimating Amounts of Other Income Benefits:** We have the right to estimate the amount of benefits the Covered Person may be eligible to receive under the "Other Income Benefits" section. We can reduce Our payments to him by the estimated amount if:

1. he has not been awarded but have not been denied such benefits; or
2. he has been denied such benefits and the denial is being appealed; or
3. he is reapplying for such benefits.

We will NOT reduce Our payments to the Covered Person by the estimated amount if:

1. he applies or reapplies for the benefits and appeals his denial through all of the administrative levels We believe are necessary;
2. he signs Our reimbursement agreement form stating that he promises to pay Us any overpayment caused by an award.

If We reduce Our payments to the Covered Person by an estimated amount:

1. We will adjust Our payment to him when he provides proof of the amount awarded; or
2. We will issue a lump sum refund of the estimated amount if he was denied benefits and has completed all appeals (or reapplications) We believe are necessary.

## WORKING RETURNS LONG TERM DISABILITY INSURANCE FOR COVERED PERSON (continued)

**Termination of Benefits:** We will stop sending the Covered Person payments and his claim will end on the earliest of:

1. the date he is no longer Disabled according to the terms of the Policy;
2. the date he reaches the end of the Maximum Benefit Period;
3. the date he fails to provide proof of continuing Disability;
4. the date his Disability Earnings exceed the amount allowable under the Policy;
5. the date he is able to increase his Disability Earnings by increasing the number of hours he work or the number of duties he performs but he chooses not to do so;
6. the date he refuses to be examined by a Physician, if such an exam is requested by Us;
7. the date he refuses to be interviewed by one of Our representatives;
8. the date he ceases to be under the Regular Care of a Physician;
9. the date he dies.

If the Covered Person is a citizen of the United States and is receiving Treatment outside of the United States, We may require him to return to the United States for Treatment. Failure to do so when requested may result in termination of benefits.

**Limitations:**

**Mental Illness and Substance Abuse Limitation**
Disabilities due to Mental Illness or Substance Abuse have a limited pay period of 24 months. This is a lifetime cumulative maximum benefit period for Disabilities due to Mental Illness or Substance Abuse.

We will continue to send the Covered Person payments beyond the limited pay period if he is confined to a Hospital or Medical Facility. If he is still Disabled when he is discharged, We will send him payments for a recovery period of up to 90 days. If he becomes re-confined at any time during the recovery period and remains confined for at least 14 days in a row, We will send payments during that additional confinement and for one additional recovery period up to 90 more days.

In no case will benefits be paid beyond the Maximum Benefit Period.

**Mental Illness means:** any Sickness, disease or disorder, which is:

1. listed in the current edition of the Diagnostic and Statistical Manual of Mental Health Disorders (or any successor diagnostic manual) published by the American Psychiatric Association; and
2. usually treated by a mental health provider or other qualified provider, using psychotherapy, psychotropic drugs or other similar methods of Treatment.

**WORKING RETURNS LONG TERM DISABILITY INSURANCE FOR COVERED PERSON (continued)**

Mental Illness includes any such conditions whether or not related to an underlying physical, genetic, chemical, organic or biological cause, although it may be associated with physical symptoms, manifestations or expressions. Specific conditions include, but are not limited to:

1. bipolar disorder;
2. depression and depressive disorders;
3. psychoses;
4. mood disorders;
5. manic-depressive illness;
6. anxiety disorders;
7. stress disorders including post-traumatic stress disorders;
8. somatoform disorders;
9. factitious disorders;
10. eating disorders;
11. adjustment disorders; and
12. personality disorders.

For purposes of the Policy, Mental Illness does not include coma (unless a consequence of Substance Abuse), mental retardation or Alzheimer's disease and other forms of dementia with an objectifiable organic basis.

**Substance Abuse means:** alcoholism, or the non-medical use of narcotics, sedatives, stimulants, hallucinogens, or any other such substance, whether or not prescribed by a Physician.

**General Exclusions:** We will not cover a Disability under the Policy if it is due to:

1. an act or accident of war, declared or undeclared, whether civil or international , and any substantial armed conflict between organized forces of a military nature;
2. intentionally self-inflicted Injuries;
3. active participation in a riot;
4. committing or attempting to commit a felony.

We will not make a payment for any period of time during which the Covered Person is incarcerated or under House Arrest. The Maximum Benefit Period will be reduced by the amount of time he is incarcerated or under House Arrest after completion of the Elimination Period.

**House Arrest means:** any restriction placed on the Covered Person's movement outside of his home by a court of competent jurisdiction. Compliance with such restriction is regularly monitored using electronic or other means.

**Pre-Existing Condition Exclusion: 3/12**
We will not cover any Disability that begins during the first 12 months after the Covered Person's Effective Date of insurance that is caused or contributed to by a Pre-Existing Condition.

**Pre-Existing Condition means:** any Sickness or Injury including Mental Illness, Substance Abuse or Subjective Symptoms for which the Covered Person , within 3 months prior to his Effective Date of insurance:

1. was diagnosed by or received Treatment from a legally qualified Physician; or
2. had symptoms for which an ordinarily prudent person would have sought Treatment.

**Continuity of Insurance Upon Transfer of Insurance Carriers:** In order to prevent loss of insurance for a Covered Person because of a transfer of insurance carriers, We will provide insurance for certain Employees as follows:

Employees who are not Actively at Work due to Sickness or Injury:

We will insure the Employee under this Policy if the prior group insurance policy insured him and the cost of his insurance under the prior group insurance policy was paid.

Our payments to the Employee will be limited to the lesser of the Monthly Payment under the Policy or the monthly benefit the prior group insurance policy would have paid him, had that policy stayed in effect. Our payments will be reduced by any amount the prior group insurance policy is responsible for paying.

Employees who are Disabled due to a Pre-Existing Condition:

If the Employee was insured by the prior group insurance policy immediately prior to becoming eligible for insurance under this Policy, he is Actively at Work and he is insured under this Policy, then he may be eligible for payments under this Policy if his Disability is due to a Pre-Existing Condition.

In order to receive payments from Us, the Employee must satisfy the Pre-Existing Condition Exclusion test of:

1. this Policy; or
2. the prior group insurance policy, had that policy stayed in effect.

We will give credit toward continuous time insured under both policies. We will determine Our payments using the provisions of this Policy, but the Employees Monthly Payment will not be more than the maximum monthly payment of the prior group insurance policy.

The Employee's Monthly Payment will end on the earlier of the following:

1. the end of the Maximum Benefit Period;
2. the date benefits would have ended under the prior group insurance policy, if the policy had stayed in effect.

If the Employee cannot satisfy the Pre-Existing Condition Exclusion test of either policy, then he will not be eligible for a Monthly Payment.

**Recurrent Disability:** If the Covered Person's current Disability is related or due to the same causes(s) as his prior Disability for which We made a payment, We will treat his current Disability as part of his prior claim and he will not have to complete another Elimination Period if he returns to Active Work for his Employer on a full time basis for 6 consecutive months or less. His Disability will be subject to all of the provisions as his prior claim and will be treated as a continuation of that Disability.

Any Disability which occurs after 6 consecutive months from the date the Covered Person's prior claim ended will be treated as a new claim. His new claim will be subject to all of the provisions, including the Elimination Period.

If the Covered Person returns to work for another Employer, We will treat a Recurrent Disability the same as established above for the first 6 months following his return to work. Any Recurrent Disability that occurs more than 6 months but less than 12 months after the end of the Covered Person's prior Disability will be treated as a continuation of the prior Disability, but the Covered Person will be required to complete a new Elimination Period.

If the Covered Person becomes entitled to benefits under any other Group Long Term Disability policy, he will not be eligible for payments under the Policy.

**Recurrent Disability means:** a Disability that is:

1. caused by a worsening in the Covered Person's condition; and
2. due to the same or related cause(s) as his prior Disability for which We made a payment.

**Multiple Causes** : If a period of Disability is extended by a new, unrelated cause while benefits are payable, benefits will continue while the Covered Person remains Disabled, subject to the following:

1. benefits will not continue beyond the end of the original Maximum Benefit Period; and
2. any Exclusions and Pre-existing Conditions Limitations will apply to the new cause of Disability.

**Concurrent Disability:** Benefits for a Concurrent Disability will be paid as if the Concurrent Disability were caused by one Injury or one Sickness. In no event will a Covered Person be considered to have more than one continuous period of Disability at the same time.

**Concurrent Disability means:** one continuous period of Disability that is caused by more than one Injury or Sickness.

**Lump Sum Survivor Benefit:** When We receive proof that the Covered Person died, We will pay his Spouse, if living, otherwise, his children under age 25, a lump sum benefit equal to 3 months of the Covered Person's monthly Gross Disability Payment if, on the date of the Covered Person's death:

1. his Disability had continued for 180 or more consecutive days; and
2. he was receiving or was entitled to receive a Monthly Payment under the Policy.

If the Covered Person has no living Spouse or children, payment will be made to his estate. However, We will first apply the survivor benefit to any overpayment which may exist on the Covered Person's claim.

## WORKING RETURNS LONG TERM DISABILITY INSURANCE FOR COVERED PERSON (continued)

**Workplace Modification Benefit:** A workplace modification benefit may be payable to the Covered Person's Employer if a change is made to the work environment or the way a job is performed to allow the Covered Person to be Actively at Work and to perform the Material and Substantial Duties of his Regular Occupation, or any Gainful Occupation.

To qualify for a benefit:

1. the Covered Person must be Disabled under the terms of the Policy;
2. the Employer must agree to make the necessary modifications so that the Covered Person can return to work; and
3. any proposed modifications to the work place must be in writing and approved by Us prior to implementation.
4. In considering any proposed modifications, We have the right to have the Covered Person evaluated by a Physician or other health care professional, or a vocational rehabilitation specialist of Our choice.

When the above qualifications are met, the Covered Person's Employer will be reimbursed for the cost of the modification up to a maximum amount for the Workplace Modification Benefit. This benefit is available to the Covered Person on a one-time-only basis, at Our discretion, and will be paid in addition to any other Disability benefits for which the Covered Person qualifies. The Workplace Modification Benefit maximum amount is $5,000.

**Rehabilitation Services:** rehabilitation program is available to assist the Covered Person in his return to work. Participation in this program is voluntary on his part and will be offered at Our discretion.

Our vocational rehabilitation specialists will review the Covered Person's file to determine if rehabilitation services might help him return to a Gainful Occupation. Once the review is completed, We may offer and pay for a return to work program. We will work with the Covered Person's Physician and other appropriate specialists to develop a plan that best suits the Covered Person's needs.

The return to work program may include, but is not limited to, the following services:

1. coordination with the Covered Person's Employer to assist him in his return to work;
2. evaluation of adaptive equipment to allow the Covered Person to work;
3. vocational evaluation to determine how his Disability may impact his employment options;
4. job placement services;
5. resume preparation;
6. job seeking skills training;
7. retraining for a new occupation; or
8. assistance with relocation that may be part of an approved return to work program.

We reserve the right to make the final decision concerning the Covered Person's eligibility to take part in a rehabilitation program and the amount of any services he will be provided.

During the Covered Person's participation in an approved rehabilitation program, his Gross Disability Payment will be increased by 5% for Rehabilitation Services.

## WORKING RETURNS LONG TERM DISABILITY INSURANCE FOR COVERED PERSON (continued)

In addition, We will make monthly payments to the Covered Person for 3 months following the date his Disability ends if We determine he is no longer Disabled while:

1. he is participating in Our rehabilitation program; and
2. he is not able to find employment.

**Employee Outreach Services:** may provide Employee Outreach Services for a Covered Person who has a medical disability accompanied by psychosocial problems that may interfere with his recovery and return to work.

Employee Outreach Services will be provided at our discretion and may include, but are not limited to:

1. service provider referrals; and
2. identifying available community and state resources that may be helpful in the Covered Person's recovery and return to work.

**Social Security Assistance:** If the Covered Person is receiving a payment from Us, through, We can provide advice to him regarding his Social Security Disability benefits claim and assist him with his application or appeal.

Receiving Social Security Disability benefits may enable:

1. him to receive Medicare after 24 months of disability payments;
2. him to protect his retirement benefits; and
3. his family to be eligible for Social Security benefits.

We can assist the Covered Person in obtaining Social Security disability benefits by:

1. helping him find appropriate legal representation or other assistance;
2. obtaining medical and vocational evidence; and
3. reimbursing pre-approved case management expenses.

**Claim Information:**

**Notice of Claim:** Written notice of a claim must be given to Us at Our Home Office by the Covered Person within 30 days after the date his Disability begins. If it is not possible, written notice must be given as soon as it is reasonably possible to do so.

The claim form is available from the Covered Person's Employer, or can be requested from Us. If the Covered Person does not receive the form from Us within 15 days of his request, written proof of claim should be sent to Us without waiting for the form. Written proof should establish facts about the claim such as date of occurrence, nature and extent of the Disability.

The Covered Person must notify Us immediately when he returns to work in any capacity.

**Filing a Claim:** The Covered Person and his Employer must fill out their own section of the claim form and then give it to the Covered Person's attending Physician. The Physician should fill out his section of the form and send it directly to Us.

## WORKING RETURNS LONG TERM DISABILITY INSURANCE FOR COVERED PERSON (continued)

**Proof of Claim:** Written proof of claim must be filed within 90 days after the Covered Person's Elimination Period ends. However, if it is not possible to give proof within 90 days, it must be given no later than one year after the time proof is otherwise required, except in the absence of legal capacity.

Proof of claim must include:

1. the date the Covered Person's Disability began;
2. appropriate documentation of the Disabling disorder;
3. the extent of the Covered Person's Disability, including restrictions and limitations preventing him from being Actively at Work;
4. the appropriate documentation of the Covered Person's earnings;
5. the name and address of any Hospital or Medical Facility where the Covered Person received Treatment;
6. the name and address of all Physicians providing Regular Care or specialty care.

We may request that the Covered Person send proof of continuing Disability, satisfactory to Us, indicating that he is under the Regular Care of a Physician. This proof, provided at the Covered Person's expense, must be received within 30 days of a request by Us.

In some cases, the Covered Person will be required to give Us authorization to obtain additional medical information, and to provide non-medical information as part of his proof of claim, or proof of continuing Disability. We will deny a Covered Person's claim or stop sending him payments if the appropriate information is not submitted.

**Payment of Claim:** Except as otherwise noted for specified additional benefits that may be included in the Policy, all benefits are payable to the Covered Person. If a benefit is payable to the Covered Person's estate, to a minor or to someone who is not competent to give a valid release, We have the right to pay up to $1,000 to any of the Covered Person's relatives whom We consider entitled. Any amount We pay in good faith releases Us from further liability, but only for the amount paid.

**Overpayment of Claim:** We have the right to recover any overpayments due to:

1. fraud;
2. any error We make in processing a claim; and
3. the Covered Person's receipt of Other Income Benefits.

The Covered Person must reimburse Us in full. We will determine the method by which the repayment is to be made. We have the right to recover overpayment from the Covered Person's Spouse if living, otherwise child under the age 25 or estate.

**Legal Action:** The Covered Person may not bring suit to recover under this section until 60 days after he has given Us written proof of loss. No suit may be brought more than three years after the date the proof of loss is required to be filed.

# STATUTORY PROVISIONS

## ARKANSAS

Residents of the state of Arkansas , the following provision is included to bring your Certificate into conformity with Arkansas state law:

### Insurer Information Notice

Any questions regarding the Policy may be directed to:
United HealthCare Insurance Company
Administrative Offices
6300 Olson Memorial Highway
Golden Valley, MN 55427
1-866-615-8727

If the question is not resolved, you may contact the Arkansas Insurance Department:
Arkansas Insurance Department
Consumer Services Division
400 University Tower Building
Little Rock, Arkansas 77204
Telephone: 1-800-852-5494

## MINNESOTA

Minnesota has determined that its statutory requirements apply to Minnesota residence when non-Minnesota sitused Employers have 25 or more Employees residing in Minnesota.

Any questions regarding these statutory requirements may be directed in writing to:

UnitedHealthcare Specialty Benefits
Contract Services
MN010-W115
6300 Olson Memorial Highway
Golden Valley, MN 55427

## MONTANA

Residents of the state of Montana, the following provision is included to bring your Certificate into conformity with Montana state law:

**Conformity with Montana Statutes:** For Montana residents, the provisions of this Policy are intended to conform to the minimum requirements of Montana law. If any provision of the Policy conflicts with any Montana statutes, the provision will be deemed to conform to the minimum requirements of the Montana law.

### Discretionary Authority

When a Discretionary Authority provision is shown in the CERTIFICATE GENERAL PROVISIONS section it is her eby deleted in its entirety.

### Disability Pre-Existing Exclusion

Any applicable Pre-Existing exclusion will not be applied to any disability that begins more than 12 months after the Covered Person' s Effective Date of insurance.

## NEW HAMPSHIRE

Residents of the state of New Hampshire, the following provision is included to bring your Certificate into conformity with New Hampshire state law:

### Proof of Claim

The provision(s) entitled Proof of Claim as contained in the Certificate of Coverage is modified to include the following:

Failure to furnish such proof of claim within the Certificate of Coverage stated time limit will not invalidate nor reduce any claim if it is shown not to have been reasonably possible to furnish such proof and that such proof was furnished as soon as it was reasonably possible.

### Discretionary Authority

When a Discretionary Authority provision is shown in the Certificate of Coverage GENERAL PROVISIONS section it is hereby deleted in its entirety.

## NORTH CAROLINA

Residents of the state of North Carolina, the following provision is included to bring your Certificate into conformity with North Carolina state law:

### Proof of Claim

The provision(s) entitled Proof of Claim as contained in the Certificate is modified as follows:

Written proof of claim must be filed within 180 days of the loss. However, if it is not possible to give proof within 180 days, it must be given no later than one year after the time proof is otherwise required, except in the absence of legal capacity.

### Occupational Injury or Sickness Exclusion

Any exclusion that applies to an Occupational Injury or Sickness is hereby replaced by the following:

An Occupational Injury or Sickness for treatments which are paid under the North Carolina Worker's Compensation Act only to extent such services or supplies are the liability of the employee, employer or workers' compensation insurance carrier according to a final adjudication under the North Carolina Workers' Compensation Act or an order of the North Carolina Industrial Commission approving a settlement agreement under the North Carolina Workers' Compensation Act.

## NORTH DAKOTA

Residents of the state of North Dakota, the following provision is included to bring your Certificate into conformity with North Dakota state law:

**10 Day Right to Examine Certificate** : There is a 10 day right to review this Certificate. If You decide not to keep it, it may be returned to Us within 10 days of the original Certificate Effective Date. In that event, We will consider it void from the Certificate Effective Date and refund all premium paid. Any claims paid during the initial 10 day period will be deducted from the refund.

## OKLAHOMA

Residents of the state of Oklahoma, the following provision is included to bring your Certificate into conformity with Oklahoma state law:

**Certificates delivered to residents of state of Oklahoma are subject to Oklahoma laws.**

## OKLAHOMA (continued)

### Incontestability

The Incontestability provision shown in the Certificate GENERAL PROVISIONS section is replaced by the following:

**Incontestability:** We may not contest the validity of the Policy, except for the non-payment of premiums, after it has been in force for two years from its date of issue. No statement made by any Covered Person relating to his insurability shall be used in contesting the validity of the insurance with respect to which such statement was made after such insurance has been in force prior to the contest for a period of two years during such person's lifetime, unless it is contained in a written instrument signed by him. This clause will not affect Our right to contest claims made for accidental death or accidental dismemberment benefits.

## TEXAS

Residents of the state of Texas, the following provision is included to bring your Certificate into conformity with Texas state law:

### Incontestability

The Incontestability provision under the CERTIFICATE GENERAL PROVISIONS section, is amended to remove the phrase "or fraudulent misrepresentatio ns" from the first sentence.

# TEXAS

**IMPORTANT NOTICE**

To obtain information or make a complaint:

You may call United HealthCare Insurance Company's toll-free telephone number for information or to make a complaint at

800-554-5413

You may also write to United HealthCare Insurance Company at:

United HealthCare Insurance Company
Administrative Offices
9900 Bren Road East
Minnetonka, MN 55343

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:
800-252-3439

You may write the Texas Department of Insurance at:

P.O. Box 149104
Austin, TX 78714-9104
FAX #(512) 475-1771

**PREMIUM OR CLAIM DISPUTES:**
Should you have a dispute concerning your premium or about a claim you should contact the company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

**ATTACH THIS NOTICE TO YOUR POLICY:**
This notice is for information only and does not become a part or condition of the attached document.

**AVISO IMPORTANTE**

Para obtener información or para someter una queja:

Usted puede llamar al numero de telefono gratis de United HealthCare Insurance Company's para información o para someter una queja al

800-554-5413

Usted también puede escribir a United HealthCare Insurance Company's:

United HealthCare Insurance Company
Administrative Offices
9900 Bren Road East
Minnetonka, MN 55343

Puede comunicarse con el Departamento de Seguro de Texas para obtener informacion acerca de compañías, coberturas, derechos o quejas al
800-252-3439

Puede escribir al Departamento de Seguros de Texas

P.O. Box 149104
Austin, TX 78714-9104
FAX #(512)475-1771

**DISPUTAS SOBRE PRIMAS O RECLAMOS:**
Si tiene una disputa concemiente a su prima o a un reclamo, debe comunicarse con la compañía primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI).

**ADJUNTAR ESTE AVISO A SU POLIZA:**
Esto aviso es solo para propositio de informacion y no se convierte en parte o condición del documento adjunto.

Form No. ACN-TX-MP (8/95)

# United HealthCare Insurance Company
# Notice of Privacy Policy and Practices

**Purpose of this Notice**
United HealthCare Insurance Company respects the privacy of personal information and understands the importance of keeping this information confidential and secure. This Notice describes how we protect the confidentiality of the personal information we receive. Our practices apply to current and former members.

**Types of Personal Information We Collect**
We collect a variety of personal information to administer a member's life or health coverage. Some of this information is provided by members in enrollment forms, surveys and correspondence (such as address, Social Security number, and dependent information). We also receive personal information (such as eligibility and claims information) through transactions with our affiliates and members, employers, insuranc e agents, other insurers, and health care providers. We retain this information after a member's coverage ends. We limit the collection of personal information to that which is necessary to administer our business, provide quality service and meet regulatory requirements.

**How We Protect Personal Information**
We treat personal information securely and confi dentially. We limit access to personal information to only those persons who need to know that inform ation to provide our products or services to members (for example, our claims processors and care coordinators). These persons are trained on the importance of safeguarding this information and must comply with our procedures and applicable law. We meet strict physical, electroni c and procedural security standards to protect personal information and maintain internal procedur es to promote the integrity and accuracy of that information.

**Disclosure of Personal Information**
We may share any of the personal information we collect (as described above) with our affiliates as permitted by law. We may also disclose this information to non-affiliate d entities or individuals as permitted or required by law. Non-affiliate s with whom we may disclose information as permitted by law include our attorneys, accountants and auditors, a member's authorized representative, health care providers, third party administrators, insurance agents and brokers, other insurers, consumer reporting agencies, and law enforcement or regulatory authorities. We may also disclose any of the personal informatio n we collect (as described above) to companies that perform marketing services on our behalf or to other companies with whom we have joint marketing or disease management agreements. We do not disclose personal information to any other third parties without a member's request or authorization .

**Individual Rights to Access and Correct Personal Information**
We have procedures for a member to access the personal information we collect, and other than information we collect in connection with, or in anticipation of, a lawsuit or legal claim, we will make this information available to the member upon written request. Our goal is to keep our member information up-to-date and to correct inaccurate information. We have procedures in place to ensure the integrity of our informati on and for the timely correction of incorrect information. If you believe that any personal information we have about you is not accurate, please let us know by contacting our Compliance Officer at United Healthcare Specialty Benefits, Mail Route MN010-W115, 6300 Olson Memorial Highway, Golden Valley, MN 55427.

**Further Information**
We may amend our privacy policy from time to time. In accordance with applicable law, we will send our current customers a Notice describing our privacy policy and practices at least once a year. It will also be available upon request. This Notice is provided on behalf of the following United HealthCare Insurance Company affiliates:

For purposes of this Notice of Privacy Practices, "we" or "us" refers to the following UnitedHealthcare entities: All Savers Insurance Company; AmeriChoice of New Jersey, Inc.; AmeriChoice of New York, Inc.; AmeriChoice of Pennsylvania, Inc.; Arizona Physicians IPA, Inc.; Dental Benefit Providers of California, Inc.; Dental Benefit Providers of Illinois, Inc.; Dental Benefit Providers of Maryland, Inc.; Dental Benefit Providers of New Jersey, Inc.; Evercare of Arizona, Inc.; Evercare of Texas, L.L.C.; Fidelity Insurance Company; Golden Rule Insurance Company; Great Lakes Health Plan, Inc.; MAMSI Life and Health Insurance Company; MD-Individual Practice Association, Inc.; Midwest Security Life Insurance Company; Optimum Choice, Inc.; Optimum Choice of the Carolinas, Inc.; Rooney Life Insurance Company; Spectera, Inc.; Spectera Eyecare of North Carolina, Inc.; Spectera Vision, Inc.; Spectera Vision Services of California, Inc.; Unimerica Insurance Company; Unimerica Life Insurance Company; Unimerica Life Insurance Company of New York; United Behavioral Health; United HealthCare of Alabama, Inc.; United HealthCare of Arizona, Inc.; United HealthCare of Arkansas, Inc.; United HealthCare of Colorado, Inc.; United HealthCare of Florida, Inc.; United HealthCare of Georgia, Inc.; UnitedHealthcare of Illinois, Inc.; United HealthCare of Kentucky, Ltd.; United HealthCare of Louisiana, Inc.; UnitedHealthcare of the Mid-Atlantic, Inc.; United HealthCare of the Midlands, Inc.; United HealthCare of the Midwest, Inc.; United HealthCare of Mississippi, Inc.; UnitedHealthcare of New England, Inc.; UnitedHealthcare of New Jersey, Inc.; UnitedHealthcare of New York, Inc.; UnitedHealthcare of North Carolina, Inc.; United HealthCare of Ohio, Inc.; United HealthCare of Tennessee, Inc.; United HealthCare of Texas, Inc.; United HealthCare of Utah; UnitedHealthcare of Wisconsin, Inc.; United HealthCare Insurance Company; United HealthCare Insurance Company of Illinois; United HealthCare Insurance Company of New York; United HealthCare Insurance Company of Ohio; and U.S. Behavioral Health Plan, California.

# SUMMARY PLAN DESCRIPTION

**Name of Plan**: Ventyx Inc. Group Welfare Plan

**Name, Address and Telephone Number of Plan Sponsor:**
Ventyx Inc.
3301 Windy Ridge Pkwy., Suite 200
Atlanta, GA 30339
(770) 952-8444

**Employer Identification Number (EIN):** 94-3273443
**IRS Plan Number:** 501

**Effective Date of Plan**: Insert effective date

**Type of Plan:** Welfare benefit plan

**Name, Business Address, and Business Telephone Number of Plan Administrator:**
Ventyx Inc.
3301 Windy Ridge Pkwy., Suite 200
Atlanta, GA 30339
(770) 952-8444

**Insurance Carrier:**
United HealthCare Insurance Company
Golden Valley, MN

**Type of Administratio n of the Plan:**
The Plan is administered on behalf of the Plan Admi nistrator by the Insurance Carrier pursuant to the terms of the group insurance policy issued by the Insurance Carrier.

**Person designated as agent for service of legal process:**
Ventyx Inc.
3301 Windy Ridge Pkwy., Suite 200
Atlanta, GA 30339
(770) 952-8444

**Source of contributions and funding under the Plan:**
The Plan is funded by the payment of prem ium required by the insurance policy.

**Method of calculating the amount of contribution:** Employee required contributions to the Plan Sponsor are the employee's share of costs as determined by the Plan Sponsor. From time to time the Plan Sponsor will determine the requ ired employee contributions for reimbursement to the Plan Sponsor and distribute a schedule of such required contributions to employees.

**Date of the end of the year for purposes of maintaining Plan's fiscal records:** Plan year shall be a twelve-month period ending December 31st.

**Plan Details:** The Plan's provisions relating to eligibility to participate and termination of eligibility as well as a description of the benefits provided by this Plan are described in detail in the Covered Person's Certificate of Coverage which precedes this ERISA information.

**Plan Amendment and Termination:** The Plan Sponsor reserves the right to modify, suspend or terminate this Plan at any time. The Employer does not promise the continuation of any benefits nor does it promise any specific level of benefits at or during retirement. Any benefits, rights or obligations of participants and beneficiaries under this Plan following termination are described in detail in the Covered Person's Certificate of Coverage which precedes this ERISA information. ,

The Plan Sponsor adopts all provisions of the insurance policy issued by the Insurance Carrier, as amended from time to time, as part of this Plan when it arranges for and maintains the insurance provided for in the policy.

## STATEMENT OF EMPLOYEE ERISA RIGHTS

The Employee Retirement Income Security Act of 1974 (ERISA) guarantees certain rights and protections to participants of welfare plans. Federal law and regulations require that a "Statement of ERISA Rights" be included in this description of the Plan.

You may examine, without charge, all Plan documents, including any insurance contracts, collective bargaining agreements, annual reports, summary plan descriptions and other documents filed with the Department of Labor. You can examine copies of these documents in the Plan Administrator's office or at other specified locations, or you can ask your supervisor where copies of the documents are available.

If you want a personal copy of Plan documents or related material, you should send a written request to the Plan Administrator. You will be charged only the actual cost of these copies.

You are entitled to receive a summary of the Plan's annual financial report. The Plan Administrator is required by law to furnish each participant with a copy of this summary annual report.

In addition to creating rights for Plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. These individuals, called "fiduciaries," have an obligation to administer the Plan prudently and to act in the interest of Plan participants and beneficiaries. The named fiduciary for this Plan is the Plan Sponsor. No one, including the Employer or any other person, may fire a Covered Person or otherwise discriminate against a Covered Person in any way to prevent that person from obtaining a benefit or exercising their rights under ERISA.

When you become eligible for payments from the Plan, you should follow the appropriate steps for filing a claim. In case of claim denial, in whole or in part, you must receive a written explanation of the reason for the denial. You have the right to have your claim reviewed and reconsidered.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request materials from the Plan and do not receive them within 30 days, you may file suit in a federal court. In such a case, the court may require the Plan Administrator to provide you the materials and pay you up to $110 per day until you receive your materials, unless the materials were not sent because of reasons beyond the control of the Plan Administrator. If you have a claim for benefits which is denied or ignored, in whole or in part, you may file a suit in a state or federal court provided you have exhausted the procedures and complied with the timeframes for review of the adverse claim decision provided below. If it should happen that Plan fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a federal court. The court will decide who should pay costs and legal fees. For example, if you are successful, the court may order the person you sued to pay those costs and fees. If you lose or if the court finds your suit to be frivolous, you may be ordered to pay these costs and fees.

If you have any questions about your Plan, you should contact the Plan Administrator. If you have any questions about this statement or about your rights under ERISA, contact the nearest Area Office of the Employee Benefits Security Administration, United States Department of Labor listed in your telephone directory or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

## CLAIMS DENIAL FOR DISABILITY INSURANCE

Notice of a decision to deny a claim (in whole or in part) shall be furnished to the claimant within 45 days following the receipt of the claim. Up to two extensions of 30 days each will be allowed for processing the claim for matters beyond the Plan's control or if additional information is needed from the claimant. If special circumstances require an extension of time for processing the claim, written notice of the extension shall be furnished to the claimant prior to the expiration of the initial 45 day period.

The notice of extension shall indicate the special circumstances requiring the extension and the date by which the notice of decision with respect to the claim is expected to be furnished. If a claim is denied (in whole or in part) notice shall be provided to the claimant in writing and shall set forth: 1) the reason(s) for the denial; 2) reference to the provision(s) of the Plan on which the denial is based; 3) a description of any additional material or information necessary for the claimant to perfect the claim, if the claim was denied because the claimant failed to provide all necessary information, and an explanation of why such material or information is necessary; and 4) an explanation of the claim review procedure. If written notice of the denial is not furnished to the claimant within 45 days (or if an extension was required, 105 days) from the date the claim was received, the claim shall be deemed denied and the claimant shall then be permitted to proceed with the procedure set forth below.

## REVIEW OF DENIED CLAIMS AND COMPLAINT PROCEDURE FOR DISABILITY INSURANCE

If a covered person or any person claiming through a covered person wishes to have a denied claim reviewed, a written request must be sent to the address identified in the claim denial letter.

Any complaint or dispute related to review of denied claims shall be resolved in accordance with the procedure set forth by the Plan Sponsor and outlined below.

1. The complainant may contact the Insurance Carrier's service representative in an attempt to resolve the complaint in an informal manner.
2. If the complainant is not satisfied with any attempts at informal resolution, the complainant must submit a written request for review of a denied claim or a written notice of the complaint or dispute to the address identified on the claim denial letter within 180 days of receipt of the claim denial notice. The complainant may submit supporting documentation or information to be considered. The complainant must submit any requested additional information or documents.
3. A written notice of the final decision will usually be sent to the complainant within 45 days of receipt of the written request for review of a denied claim or notice of a complaint or dispute. However, if special circumstances require an extension of time to reach a final decision, written notice of the final decision will be sent as soon as possible following the expiration of the initial 45 day period, but no later than 90 days following receipt of the request for review of a denied claim or notice of a complaint or dispute. If special circumstances require such an extension of time, written notice of the extension shall be furnished to the complainant prior to the expiration of the initial 45 day period. The written notice of the final decision will give specific reason(s) for the decision and references to the provision(s) of the Plan on which the decision is based. If the final written decision is not furnished to the complainant within 45 days (or if an extension was required, 90 days) from the date of receipt of the request for review of a denied claim or notice of a complaint or dispute, the request for review or the complaint or dispute shall be deemed to be rejected and denied on review.

EXHIBIT B

UnitedHealthcare®
Specialty Benefits℠

PO Box 7466 Portland ME 04112-7466
Tel 888 299 2070 Fax 888 505 8550

May 21, 2010

MATTHEW HARRIS
108 HESKETH COURT
ROSEVILLE CA 95747

| | | |
|---|---|---|
| Re: | Plan | Long Term Disability (LTD) |
| | Date of Disability | November 10, 2009 |
| | Policy Number | 302036 |
| | Claim Number | 200645064 |

Dear Mr. Harris:

I am writing to let you know that your Long Term Disability claim has been approved. Following is an explanation of how your benefits and policy work.

The policy states:

"Definition of Disabled or Disability:
The Covered Person is Disabled or has a Disability when We determine that:

1. he is unable to perform some or all of the Material and Substantial Duties of his Regular Occupation due to his Sickness or Injury; and
2. he has a 20% or more loss in Indexed Pre-Disability Monthly Earnings due solely to the same Sickness or Injury; and.
3. he is under the Regular Care of a Physician.

Disability must begin while the Covered Person is insured under the Policy.

Material and Substantial Duties: duties that

1. are normally required for the performance of the Covered Person's Regular Occupation; and
2. cannot be reasonably omitted or modified.

Regular Occupation means: the occupation which the Covered Person is routinely performing when his Disability occurs. We will look at the Covered Person's occupation as it is normally performed in the national economy instead of how the work tasks are performed for a specific Employer or at a specific location."

United Healthcare Insurance Company became the Long Term Disability insurance carrier for your employer as of January 1, 2009. Prior to this date you were insured under the prior Long Term Disability plan. Although the plans have similarities, they do contain different benefit amounts. The prior policy that covered you through December 31, 2008, has a maximum monthly benefit amount of $5,000. The United Healthcare policy has a maximum monthly benefit of $20, 000.

The prior policy that covered you through December 31, 2008, had the core coverage that was paid for by your employer and provided a monthly Long Term Disability benefit of 60% of your gross monthly earnings. The United Healthcare policy has the option to purchase the increased benefit amount which would provide you with a monthly benefit of 66 2/3 % of your gross monthly earnings.

You are claiming disability within the first 12 months of effective date of coverage under the UnitedHealth Group Long Term Disability policy. Therefore we have completed a continuity of coverage review which concluded that we now need to complete a pre existing review of your claim for the maximum monthly benefit amount and gross monthly benefit amount. If we determine that you were treating for your condition during the 3 months prior to the effective date of the UnitedHealth Group Long Term Disability policy or October 1, 2008, to January 1, 2009, we will pay benefits under the prior plan, with a maximum monthly benefit of $5,000. If we determine that you did not treat for your condition during the identified look back period then we will pay a gross monthly Long Term Disability benefit of 66 2/3%.

The policy states:

> Pre-Existing Condition Exclusion: 3/12
> We will not cover any Disability that begins during the first 12 months after the Covered Person's Effective Date of insurance that is caused or contributed to by a Pre-Existing Condition.
>
> Pre-Existing Condition means: any Sickness or Injury including Mental Illness, Substance Abuse or Subjective Symptoms for which the Covered Person, within 3 months prior to his Effective Date of insurance:
>
> 1. was diagnosed by or received Treatment from a legally qualified Physician; or
> 2. had symptoms for which an ordinarily prudent person would have sought Treatment.
>
> Continuity of Insurance Upon Transfer of Insurance Carriers: In order to prevent loss of insurance for a Covered Person because of a transfer of insurance carriers, We will provide insurance for certain Employees as follows:
>
> Employees who are not Actively at Work due to Sickness or Injury:
>
> We will insure the Employee under this Policy if the prior group insurance policy insured him and the cost of his insurance under the prior group insurance policy was paid.

Our payments to the Employee will be limited to the lesser of the Monthly Payment under the Policy or the monthly benefit the prior group insurance policy would have paid him, had that policy stayed in effect. Our payments will be reduced by any amount the prior group insurance policy is responsible for paying.

Employees who are Disabled due to a Pre-Existing Condition:

If the Employee was insured by the prior group insurance policy immediately prior to becoming eligible for insurance under this Policy, he is Actively at Work and he is insured under this Policy, then he may be eligible for payments under this Policy if his Disability is due to a Pre-Existing Condition.

In order to receive payments from Us, the Employee must satisfy the Pre-Existing Condition Exclusion test of:

1. this Policy; or

2. the prior group insurance policy, had that policy stayed in effect.

We will give credit toward continuous time insured under both policies. We will determine Our payments using the provisions of this Policy, but the Employees Monthly Payment will not be more than the maximum monthly payment of the prior group insurance policy.
The Employee's Monthly Payment will end on the earlier of the following:

1. the end of the Maximum Benefit Period;

2. the date benefits would have ended under the prior group insurance policy, if the policy had stayed in effect.

If the Employee cannot satisfy the Pre-Existing Condition Exclusion test of either policy, then he will not be eligible for a Monthly Payment."

While we continue our review of your claim we will pay benefits under the prior plan. If our review concludes that there was no treatment during the identified look back period we will adjust your benefits accordingly.

The date of your disability is November 10, 2009. As you know, the policy has a 180 day Elimination Period that must be met before benefits begin. The elimination period is a total number of days, outlined in the policy, that the insured must be disabled before benefits begin. Therefore, based on a disability date of November 10, 2009, and the 180 day elimination period, your benefits will begin May 9, 2010. As we have discussed, the Long Term Disability benefit is paid once a month at the end of the monthly benefit period.

Currently, while we continue our review, the policy under which you have been approved for benefits pays 60% of your Basic Monthly Earnings to a maximum of $5,000. Your Basic Monthly Earnings are the earnings you were receiving as of the date you became disabled as determined by the policy. Your employer has stated that your Basic Monthly Earnings are $16,150.00. 60% of this is greater than the maximum benefit of $5,000; therefore you have been approved for a gross Long Term Disability benefit of $5,000.00.

The policy directs us to subtract other income you may be eligible to receive from your benefit. You are receiving California State Disability benefits in the monthly amount of $4,155.67 to November 10, 2010. You have also been awarded Social Security Disability Income (SSDI) benefits in the monthly amount of $2,423.00. Due to the other income you are receiving your Long Term Disability benefits have been reduced to the minimum monthly benefit which is 10% of the gross monthly benefit or $500.00.

These other sources of income are offsets to the Long Term Disability benefits; we need to subtract from your Long Term Disability benefit the other income you are receiving. This will be explained on your check, which will be sent separately. Your check will cover the period May 9, 2010, to June 9, 2010. You can expect to receive future checks by the 9th of the month.

The policy states in part:

"Other Income Benefits: We will subtract from the Covered Person's Gross Disability Payment the following Other Income Benefits:

1. any benefits and awards he receives or is eligible to receive under:
    a. Workers' Compensation Law;
    b. occupational disease Law; or
    c. any other similar Act or Law.

2. any Disability income he receives or is eligible to receive under:
    a. any compulsory benefit Act or Law;
    b. any other group insurance policy with the employer or with an association;
    c. any other group insurance policy with another employer under which he becomes insured while he is Disabled under the Policy; or
    d. any governmental retirement system as the result of his job with his employer.

3. any benefits under the United States Social Security Act, The Canada Pension Plan, The Quebec Pension Plan, the Jones Act, and any other similar plan or Act. Benefits include:
    a. Disability benefits he is eligible to receive and any disability benefits his spouse or his children receive or are eligible to receive as a result of his Disability.
    b. Retirement benefits he receives and any retirement benefits his spouse or his children receive as a result of his receipt of retirement benefits..."

Premium contributions are waived while the Covered Person is receiving Long Term Disability payments. Your waiver of Premium is effective May 9, 2010. As you pay the premium for your Long Term Disability coverage your Long Term Disability benefits are tax free, we have notified your employer of this waiver via modified carbon copy of this letter.

Furthermore, should you desire to have Direct Deposit, please complete the enclosed Direct Deposit Agreement and elect savings or checking. Once the form is received we will direct your benefits accordingly.

We look forward to being of service to you and we thank you for your cooperation with your claim. If you have any questions, please contact me at (888) 299-2070.

Sincerely,

Teresa Stringer

Teresa Stringer
Senior Disability Claims Specialist

CC: Ventyx Inc.

EXHIBIT C

JOSEPH LAW CORPORATION
COUNSELORS AT LAW
3629 25TH STREET
SAN FRANCISCO, CA 94110

JONATHAN M. COHEN
OF COUNSEL
JCOHEN@JOSEPHLAWCORP.COM
T: 415.817.9200
M: 415.516.8035

September 29, 2010

**Via Federal Express**

Thomas A. Coffey
Director, Human Resources
Ventyx
3301 Windy Ridge Parkway
Suite 200
Atlanta, GA 30339-5618

Teresa Stringer
Senior Disability Claims Specialist
United Healthcare
P.O. Box 7466
Portland, ME 04112-7466

David M. Goldenberg
General Counsel
Mercer
1166 Avenue of the Americas
New York, NY 10036-2708

| | | |
|---|---|---|
| Re: | Plan | Long Term Disability |
| | Date of Disability: | November 10, 2009 |
| | Policy Number: | 302036 |
| | Claim Number: | 200645064 |

Dear Mr. Coffey, Ms. Stringer and Mr. Goldenberg:

By way of introduction to Ms. Stringer and Mr. Goldenberg, this office represents Matt Harris.

I previously communicated with Ventyx regarding the decision by United Healthcare (UHC) to limit Matt's disability benefits under the Continuation of Coverage and Pre-Existing Condition language of the policy. A copy of that correspondence as well as Ventyx's response are attached hereto as Exhibit A.

While we do not believe that any claim against Ventyx or Mercer is governed by any formal appeal process and/or ERISA, this letter is intended as a request for Ventyx, Mercer and United Healthcare to review their respective decisions and actions as they relate to Mr. Harris prior our filing suit on behalf of Mr. Harris.

Factual Background

Matt joined Global Energy Decisions (GED) in February 2007. At that time, GED had a long term disability insurance policy with a limit of $5,000 per month

Ventyx then acquired GED in September 2007. Matt's title (Senior Vice President, Analytics) and pay while at GED remained unchanged. Ventyx also then acquired NEA, a major competitor of GED in early 2008. It was Mr. Harris' understanding that the long term disability policy which was in effect prior to Ventyx's acquisition of GED remained in effect for 2007 and 2008.

On January 1, 2009, Ventyx renewed its Long Term disability policy. A copy of the certificate of insurance is attached hereto as Exhibit B. The policy had become part of a cafeteria plan and provided a monthly benefit of $20,000 or 66 2/3% of gross monthly earnings.

Mr. Harris was unfortunately diagnosed with Stage IV Lung Cancer in June 2007. He began treatments in June 2007 at UC Davis under Dr. Gandara and has been under continuous treatment since diagnosis. If there is a dispute about whether or not Mr. Harris is disabled under the terms of the policy or there is any need for medical documentation as part of the review process, please notify me.[1]

In the beginning of November 2009, due to upcoming chemotherapy treatments, Mr. Harris approached Ventyx about retiring from its employ and making a claim for long term disability benefits under the policy with UHC.

On November 10, 2009, Mr. Harris met with Judy Mayo, Ventyx's Human Resources Manager, to discuss the benefits under the UHC policy. He specifically pointed out the Continuation of Coverage and Pre-Existing Condition language included in the policy. Ms. Mayo said she did not know for certain but would check with Ventyx's insurance broker, Mercer, to find out. She let Mr. Harris know a few days later that Mercer said that the January 1, 2009 policy would govern with the higher benefit caps as well as the pre-tax features that Ventyx had identified when it rolled out the cafeteria plan.

Based on these representations, Mr. Harris elected to go on disability. Ventyx used his sick and vacation time to pay him through the elimination periods.

On May 28, 2010, UHC sent a letter to Mr. Harris approving his claim for benefits.[2] However, as noted in the letter, UHC initiated a "pre existing review" and based upon the fact that Mr. Harris had been receiving treatment for his cancer since 2007 concluded that the pre-existing condition exclusion did apply. Taken in conjunction with the continuity of insurance upon transfer of insurance coverage language which is part of the pre-existing condition exclusion, UHC concluded that the benefit it needed to pay Mr. Harris was the maximum benefit under the prior policy.[3]

---

[1] If suit is filed, Mr. Harris reserves the right to introduce any necessary medical documentation to establish the date of his diagnosis as well as the extent and likely duration of his disability.
[2] A copy of the letter is attached hereto as Exhibit B.
[3] This would result in a payment of $5,000 per month to Mr. Harris minus a series of deductions for other benefits paid.

Obviously, this was completely contrary to what Mr. Harris had been told by him by Ms. Mayo after she supposedly discussed the matter with Mercer.

Subsequent to receiving the coverage decision, Mr. Harris was told that Ventyx and Mercer had discussions with UHC regarding this matter and asked for reconsideration of the decision. Mr. Harris was not privy to those discussions.[4]

If Mr. Harris had been provided accurate information about the coverages under the UHC policy, he could have and would have remained employed by Ventyx until after the one year requirement for pre-existing conditions. He could have easily used his sick and vacation time to remain employed beyond January 1, 2010 at which point, he would have been eligible for more than $10,000 per month.

Legal Issues

According to the certificate of insurance, Ventyx is the plan sponsor as well as the administrator.[5] As Mr. Harris understands it, Mercer was the broker who placed the coverage and had discussions with the plan administrator regarding coverage under the policy. This makes Ventyx, UHC and Mercer agents of one another.[6]

As I am sure that you are all aware, whether governed by ERISA or otherwise, an employer has a fiduciary duty to its employees in connection with benefits (particularly in California where benefits are considered wages)[7]. In addition, an employer has a covenant of good faith and fair dealing as to its employees, ensuring that employees get the benefits to which they are entitled.[8]

In this case, Ventyx apparently didn't do what it needed to do as a fiduciary on behalf its employee, namely follow up with Mercer and/or UHC to confirm the available coverages.[9] The alternative is that Ventyx was told one thing by Mercer who in turn had not contacted UHC or had gotten incorrect information from UHC. In any case, the ball got dropped somewhere and Mr. Harris got incorrect information upon which he relied on to his detriment.

Ventyx's claim that despite being a fiduciary and having undertaken a duty to provide correct information that somehow Mr. Harris should have read the policy and concluded

---

[4] As part of this process, Mr. Harris respectfully requests that Ventyx, Mercer and UHC make all communications regarding his coverage available for immediate copying. This letter should also serve as a demand for preservation of documents and electronic information.

[5] Mr. Harris also respectfully requests that he be provided with any agreements between Ventyx and UHC regarding claims administration.

[6] If there are cross-complaints for indemnity, so be it.

[7] See eg. Varity Corp. v. Howe (1996) 516 US 489, 513 – ERISA "requires fiduciaries to discharge their duties 'solely in the interest of the participants and beneficiaries'".

[8] Mr. Harris is also entitled to copies of all plan documents, SPD's, and materials used by Ventyx to communicate with its employees regarding benefits.

[9] See eg. James v. Pirelli Armstrong Tire Corp. (6th Circuit 2002) 305 F.3d 439, 449 – "A fiduciary breaches his duty by providing plan participants with materially misleading information 'regardless of whether the fiduciary's statements or omissions were made negligently or intentionally.'"

that the information he was getting from Ms. Mayo through Mercer was incorrect is legally unsupportable. It is well established that a fiduciary cannot avoid liability due to the naïveté of the person to whom they hold the duty.[10] In fact, it becomes incumbent on the fiduciary to correct any mistaken belief by the person to who they owe a duty.[11] If Ms. Mayo had a reason to believe that the pre-existing condition language in the UHC policy was going to govern, she had a duty to instruct Mr. Harris that he should wait until after January 1, 2010 to go out on disability.

If Mercer or UHC through Mercer had provided Ms. Mayo with any incorrect coverage information, then obviously, Mercer and/or UHC is also liable to Mr. Harris. As I am sure that you are also aware, if UHC had Ventyx working as its agent in explaining benefits and Ventyx had in fact transferred its role as administrator to UHC then UHC may have respondeat superior liability (as well as a breach of fiduciary duty) for Ventyx's failure to properly explain the benefit limits to Mr. Harris.

At this juncture, absent receipt of all documents from Ventyx, Mercer and UHC as well as depositions of the involved parties, there may be additional legal arguments not set forth herein. Mr. Harris reserves the right to raise any additional legal issues during any necessary court proceedings.

Conclusion

As expressed in the letter to Ventyx, Mr. Harris was hoping not to have to litigate this matter. However, it appears that Ventyx is not willing to admit that it has any potential liability for what is a million dollar shortfall to Mr. Harris and his family. The involvement of Mercer and UHC remains to be seen but this letter is being sent in an abundance of caution to get all of the parties together and ensure that all necessary review processes are followed.

Please feel to contact me if you have any further questions or need any additional documentation. I will await receipt of your respective file materials. Since UHC is the only one with a formal appeal process, if I do not hear back from Ventyx and/or Mercer by the time that UHC has completed its review, I will assume that there is no response and will act accordingly.

Respectfully,

Jonathan Cohen

[10] See eg. Restatement Second of Trusts: "The trustee is under a duty to communicate to the beneficiary material facts affecting the interest of the beneficiary which he knows the beneficiary does not know and which the beneficiary needs to know for his protection in dealing with a third person.." as quoted in Eddy v. Colonial Life Insurance Company of America (1990) 919 F.2d 747.

[11] See eg/ Bixler v. Central Pennsylvania Teamsters Health and Welfare Fund (3rd Cir. 1993) 12 F. 3d 1292 and Globe Woolen Co. v. Utica Gas & Electric Co. (1918) 224 N.Y. 483, 489 – "A beneficiary, about to plunge into a ruinous course of dealing, may be betrayed by silence as well as the spoken word."

WWW.JOSEPHLAWCORP.COM

# EXHIBIT D

UnitedHealthcare
Specialty Benefits

PO Box 7466 Portland ME 04112-7466
Tel 888 299 2070 Fax 888 505 8550

December 20, 2010

Jonathan Cohen
Joseph Law Corporation
3629 25th Street
San Francisco, CA 94110

| | |
|---|---|
| Re: | Mathew Harris |
| Plan | Long Term Disability (LTD) |
| Insuring Entity | UnitedHealthcare Insurance Comapny |
| Date of Disability | 11/10/2009 |
| Policy Number | 302036 |
| Claim Number | 200645064 |

Dear Mr. Cohen:

We have completed our review of the denial of Mr. Harris' higher benefit amount due to a pre-existing condition and have found that the original claim decision was processed appropriately in accordance with the provisions of the policy.

As you know, on July 8, 2010, Mr. Harris was informed that his Long Term Disability claim had been approved; however, it was also explained that his monthly benefit amount would be less than he had expected because his disabling condition was pre-existing under the terms of the policy (see enclosed letter for details).

You then appealed this decision, which we received on September 30, 2010. In your letter of appeal, you do not question the determination but rather the information Mr. Harris received prior to his going out on disability.

Upon receipt of your request, an independent appeal review commenced. Based upon this review, we have made the decision to uphold the prior claim determination. Without documentation or information to the contrary, we have no basis to reverse our prior claim determination.

Mr. Cohen, we did attempt to obtain additional information relative to your claim that Mr. Harris was provided with incorrect information at the time he was deciding whether to go out on disability. First, we attempted to reach Judy Mayo of Ventyx, Inc. by phone on October 21, 2010, but had to leave a message requesting a return phone call. Ms. Mayo and I then spoke on October 22, 2010, at which time I asked what information she could provide relative to the conversation(s) she had with Mr. Harris prior to his leaving work due to his medical status. In response, Ms. Mayo explained she would need to consult with her legal department prior to answering any questions. When I did not hear back from her, I called on two separate occasions, November 3, 2010, and November 18, 2010, and left a message requesting a call back; however, to date, I have not heard from Ms. Mayo.

Additionally, I contacted Sharon Williams, a UnitedHealthcare Account Manager, to determine if she had any information regarding Ms. Harris' claim. In turn, Ms. Williams

**PAGE 2 OF 2**

explained she never spoke to the policyholder or Mercer regarding this issue. She further advised that Patty Coleman, a supervisee of Ms. Williams, was not present at the group's open enrollment nor did she have any communication with the employees of Ventyx, Inc. relative to the policy. Ms. Williams also stated that we offered our services to Mercer at the time of open enrollment but they declined.

Further, I contacted Angela Hartman who works in Sales at UnitedHealthcare to see if she had any information regarding this claim. In response, Ms. Hartman advised she had no contact with either Ventyx, Inc. or Mercer regarding Mr. Harris' claim until after the claim determination had been rendered.

We apologize that we were unable to obtain additional information regarding the specific information provided to Mr. Harris during his decision making process.

We regret that we cannot provide the outcome that you requested, however, we must adhere to the policy provisions in adjudication of the claim and are unable to provide a benefit that is in conflict with the stated terms of the policy.

If you believe the claim has been wrongfully denied or rejected, you may have the matter reviewed by the California Department of Insurance at the following address:

Consumer Communications Bureau
Department of Insurance
300 South Spring Street, South Tower
Los Angeles, CA 90013
800-927-4357
213-897-8921

You are entitled to receive, upon request and without charge, reasonable access to copies of all documents, records or other information that are relevant to your benefit determination.

If you dispute the determination, you have a right to bring a civil suit under section 502(a) of the Employee Retirement Income Security Act of 1974.

If you have any questions, please feel free to contact me at 1 (888) 299-2070.

Sincerely,

Cathy Hayes
Appeal Specialist